IN THE UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**STATE FARM FIRE & CASUALTY CO.**
**ONE STATE FARM PLAZA**
**BLOOMINGTON, IL  61710**
      **Plaintiff,**

v.    CIVIL ACTION NO.:

**ELECTROLUX NORTH AMERICA, INC.**
**10200 DAVID TAYLOR DRIVE**
**CHARLOTTE, NC  28262**
      **Defendant.**

## COMPLAINT

Plaintiff, State Farm Fire & Casualty Company ("Plaintiff"), by and through undersigned counsel, hereby demands judgment against Defendant, Electrolux North America, Inc. ("Defendant"), complaining against it as follows:

### PARTIES

1. Plaintiff is an Illinois corporation with its principal place of business at the above-captioned address.

2. At all relevant times, Plaintiff was authorized to provide in Pennsylvania the insurance described herein.

3. At all relevant times, Plaintiff provided – via an in-force policy – homeowner insurance to Shante Walden ("subrogor") in connection with her residential property at 2275 S. Delaware Drive in Easton, Pennsylvania ("subject property").

4. As a result of related claims made on said policy in the wake of the incident described below, Plaintiff became subrogated to certain recovery rights and interests of subrogor, i.e. for monies paid per the policy, including the claims asserted in this action.

5. Upon information and belief, Defendant is a Delaware corporation with its principal place of business at the above-captioned address.

6. Upon further information and belief, Defendant was at all relevant times engaged in the business of designing, manufacturing, assembling, inspecting, testing, selling, distributing, marketing, and/or otherwise placing into the stream of commerce dehumidifiers, such as the dehumidifier at issue in this action ("the product").

## JURISDICTION AND VENUE

7. Jurisdiction is based on 28 U.S.C. §1332(a)(1) as this action involves a controversy between citizens of different states; moreover, the amount in controversy exceeds the jurisdictional threshold of this Court (exclusive of interest and costs).

8. Venue is proper in this district based on 28 U.S.C. §1391(b) in that the events giving rise to this claim occurred in this district.

## STATEMENT OF FACTS

9. Plaintiff incorporates by reference the preceding paragraphs as though set forth at length here.

10. Prior to September 3, 2021, Defendant designed, manufactured, assembled, tested, inspected, marketed, distributed and/or otherwise placed into the stream of commerce dehumidifiers; said products were intended for use by domestic consumers for the ordinary purposes associated with dehumidifiers.

11. Prior to September 3, 2021, a dehumidifier designed, manufactured, assembled, tested, inspected, marketed, distributed and/or otherwise placed into the stream of commerce by Defendant (i.e. the product) was in use at the subject property.

12. Prior to September 3, 2021, subrogor operated the product in the normal, ordinary and intended manner, as well as for its normal, ordinary and intended purposes.

13. On or about September 3, 2021, a fire originating at the product occurred at the subject property; investigation revealed that this happened because of a malfunction of the product.

14. The fire resulted in substantial damages to subrogor's property, as well as other consequential and incidental harms besides (including clean-up costs, repair, and other associated expenses).

15. At all relevant times (i.e. prior to or during its use,) the product was not modified, changed, altered or abused by subrogor.

16. At all relevant times, Defendant knew and intended that its dehumidifiers – including the product – would be used by members of the public, and knew of the specific uses, purposes and requirements to which said dehumidifiers – including the product – would be put.

17. Defendant designed, manufactured, assembled, tested, inspected, marketed, distributed and/or otherwise placed into the stream of commerce the product, including its component parts, in a dangerous and defective condition, which catastrophically failed due to a defect and/or malfunction.

18. As a result of the above-mentioned fire and consequent damages, subrogor made claims on the policy; Plaintiff paid these claims consistent therewith in an amount in excess of $345,000.00.

19. Plaintiff thereby became subrogated to certain recovery rights and interests of subrogor as to such policy monies paid, including all claims giving rise to this action.

## COUNT I – NEGLIGENCE

20. Plaintiff incorporates by reference the preceding paragraphs as though set forth at length herein.

21. Defendant owed subrogor a duty of reasonable care in regard to the design, manufacture, assembly, inspection, testing, distribution, sale, marketing, etc., of the product.

22. The damages suffered by subrogor as described above were the direct and proximate result of negligence and/or other unlawful conduct of Defendant – by and through its employees, agents, technicians, contractors, suppliers and/or servants – more specifically described as follows:

   a. failing to exercise reasonable care in the following manner:

      i. failing to design, manufacture, assemble, inspect, test, sell, distribute, and/or market a properly functioning product;
      ii. failing to properly design, manufacture, assemble, inspect, test, sell, distribute, and/or market the product; and/or
      iii. failing to properly determine that the product was not in compliance with applicable standards.

23. As a direct and proximate result of this negligence, and such negligence having resulted in the damages subrogor sustained, Defendant became liable to subrogor.

24. By operation of the insurance payments Plaintiff made to subrogor for her damages, Plaintiff became subrogated to recover on the damages suffered by subrogor for which it paid; thus, Defendant is ultimately liable to Plaintiff for the damages described herein.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant in an amount in excess of $345,000.00, plus costs incident to this suit, delay damages, and attorney fees, as well as for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT II – STRICT LIABILITY

25. Plaintiff incorporates by reference the preceding paragraphs as though set forth at length here.

26. Defendant is engaged, and at all relevant times were engaged, in the business of designing, manufacturing, assembling, inspecting, testing, selling, distributing, marketing, and/or otherwise placing into the stream of commerce (*inter alia*) dehumidifiers such as the product, and specifically did design, manufacture, assemble, inspect, test, sell, distribute, market, and/or otherwise place into the stream of commerce the product.

27. In so doing, Defendant designed, manufactured, assembled, inspected, tested, sold, distributed, marketed, and/or otherwise placed into the stream of commerce the product in a defective condition, unreasonably dangerous to subrogor and her property.

28. Defendant knew or should have known that the product would, and did, reach subrogor without substantial change in the condition in which originally selected and sold.

29. The aforementioned defects consisted of:

    a. design defects;
    b. manufacturing defects;
    c. component defects;
    d. use-instructions and/or warnings defects; and/or
    e. a failure to warn of the design, manufacturing, and/or component defects, and/or properly provided warning and/or safe-use instructions.

30. For these reasons, Defendant is strictly liable to the subrogor under Section 402A of the Restatement (Second) of Torts, as well as Pennsylvania's applicable statutory and case law.

31. By operation of the insurance payments Plaintiff made to subrogor for said damages, Plaintiff became subrogated to recover on the damages suffered by subrogor for which it paid; thus, Defendant is ultimately liable to Plaintiff for the damages described herein.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant in an amount in excess of $345,000.00, plus costs incident to this suit, delay damages, and attorney fees, as well as for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT III – BREACH OF WARRANTIES

32. Plaintiff incorporates by reference the preceding paragraphs as though set forth at length herein.

33. At the time of selling the product, Defendant knew or had reason to know of the particular purpose for which it would be used, and knew that its skill and judgment were being relied upon to furnish a suitable product.

34. Thus, given the foregoing, Defendant breached implied warranties of fitness for a particular purpose as set out in the Uniform Commercial Code ("UCC") and in 13 Pa. C.S.A. § 2-315 in that the product was not fit for the particular use for which it was intended.

35. In addition, Defendant breached implied warranties of merchantability as set out in the UCC and 13 Pa. C.S.A. § 2-314 (c) in that the product was not fit for the uses for which it was intended.

36. Defendant also breached any and all express warranties made or relating to the product that became part of the basis of the bargain for sale of the product in violation of the UCC and 13 Pa. C.S.A. § 2-313.

37. Furthermore, Defendant breached the express and implied terms set out in the

warranties enjoyed by subrogor at the time of coming to use the product, and/or any time subsequent thereto.

38. Subrogor's above-described damages occurred as a direct and proximate result of Defendant's breach of its implied warranties of fitness for a particular purpose and merchantability as set out in 13 Pa. C.S.A. § 2-315 and § 2-314 (c), and as a result of its breach of expressed warrantees in violation of 13 Pa. C.S.A. § 2-313, as well as the express and implied warranties set out in the warranties subrogor enjoyed upon coming to use the product, and/or any time subsequent thereto.

39. By operation of the insurance payments Plaintiff made to subrogor for said damages, Plaintiff became subrogated to recover on the damages suffered by subrogor for which it paid; thus, Defendant is ultimately liable to Plaintiff for the damages described herein.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant in an amount in excess of $345,000.00, plus costs incident to this suit, delay damages, and attorney fees, as well as for such other relief as this Honorable Court shall deem appropriate under the circumstances.

**de LUCA LEVINE LLC**

BY:  */s/ Daniel J. de Luca*
DANIEL J. de LUCA,
Attorneys for Plaintiff
PA ATTY I.D. NO.: 74727
301 E. Germantown Pike, 3rd Floor
East Norriton, PA  19401
Ph: 215-383-0081
Fx: 215-383-0082
ddeluca@delucalevine.com

**Dated:** September 2, 2022